Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

Nick Suciu III (*Pro Hac Vice* Application
Forthcoming)
nicksuciu@bmslawyers.com
**BARBAT, MANSOUR & SUCIU PLLC**
434 West Alexandrine #101
Detroit, Michigan 48201
Tel: (313) 303-3472

Jonathan Shub, SBN 237708
jshub@seegerweiss.com
**SEEGER WEISS, LLP**
1515 Market Street
Philadelphia, Pennsylvania 19102
Tel: (215) 564-1300; Fax: (215) 851-8092

Counsel for Plaintiff,
ADRIAN CANIZALEZ

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN CANIZALEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIT FOODS, LTD., and FIT FOODS DISTRIBUTION, INC., Canadian corporations,<br><br>Defendants. | Case No.  **'14 CV 2744 WQH BGS**<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>**1.  Violations of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.***<br><br>**2.  Violations of California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.***<br><br>**3.  Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***<br><br>**4.  Unjust Enrichment**<br><br>**5.  Breach of Express Warranty** |

Plaintiff Adrian Canizalez ("Plaintiff"), individually and on behalf of himself and all others similarly situated, by his undersigned attorneys, upon personal knowledge as to himself, upon information and belief, and based upon the investigation of his Counsel as to the remaining allegations, alleges as follows:

## INTRODUCTION

1.      This is a civil class action brought individually by Plaintiff and on behalf of all persons and entities in the United States and the state of California ("Class Members"), who purchased the dietary supplement Mutant Whey Extreme Multi Whey Mega Blend (the "Products") manufactured by Defendants Fit Foods, Ltd. and Fit Foods Distribution, Inc. (collectively, "Defendant").

2.      The whey protein industry is a growing and extremely competitive business environment.  The market for protein products "is expected to grow by 62% to reach US$7.8 billion in 2018."  *See* http://www.euromonitor.com/sports-nutrition-in-the-us/report (last visited Nov. 10, 2014).

3.      However, the price of wholesale whey protein keeps increasing and is usually purchased for roughly $15-$18/kilo, making the profit margins on whey protein powder products very low.

4.      Defendant designed, manufactured, warranted, advertised, and sold the Products throughout the United States, including in the state of California.

5.      In an effort to reduce protein-manufacturing costs, Defendant adds cheaper free form amino acids to increase the nitrogen content of the Products' protein powder. Nitrogen is the "tag" used by a common protein content test to determine the amount of protein in a product; but this is neither a direct measure of the actual protein content in a product nor a measure of the type of nitrogen containing compounds in a product.

6.      The act of adding non-protein ingredients to fake a higher protein content through a higher nitrogen content is commonly referred to as "protein-spiking", "nitrogen-spiking" or "amino-spiking."   Such "spiking" was at the center of the 2007 pet food scandal, which lead to domestic recalls of pet foods, and the 2008 Chinese

CLASS ACTION COMPLAINT

milk powder scandal, when melamine, a nitrogen-rich chemical, was added to raw materials to fake high protein contents.

7.     As a result of Defendant's practices, the consumer is left with products that contain less whey protein than Defendant represented.

8.     This practice has been condemned by the American Herbal Products Association (AHPA), an organization of dietary supplement manufacturers, which has issued a standard for manufacturers for measuring the True Protein content of their products which:

a)     Defines protein as "a chain of amino acids connected by peptide bonds" for labeling purposes;

b)     The use of calculations to include only proteins that are "chains of amino acids connected by peptide bonds; and

c)     To exclude any "non-protein nitrogen-containing substances" when counting total protein content.

*See* www.ahpa.org/Default.aspx?tabid=441 (last visited Nov. 10, 2014).

9.     General Nutrition Centers ("GNC"), one of the largest distributors in the United States of whey protein products, has publicly criticized protein spiking, claiming it to be misleading to consumers.  According to GNC, consumers cannot be sure that they are getting 100 percent protein in their products because companies don't always show how they figure total grams of protein per serving.  *See* www.gnclivewell.com/realprotein (last visited Nov. 10, 2014).

10.    Despite the knowledge that "protein-spiking" is misleading to consumers, Defendant continues to advertise, distribute, label, manufacture, market, and sell the Products in a misleading and deceptive manner in order to increase its sales and maximize its profits.

## **PARTIES**

11.    During the Class period commencing four years before the date of this filing, class members in California and throughout the United States purchased the

1  Products at numerous brick and mortar and online retail stores.  Plaintiff and class

2  members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and

3  misleading practices set forth in this Complaint.

4         12.    Plaintiff Adrian Canizalez is a resident of the City of San Diego, California,

5  and purchased the Products from luckyvitamin.com for his own use during the four years

6  preceding the filing of this complaint.

7         13.    Defendant Fit Foods, Ltd. is incorporated in Canada, with a principal place

8  of business address at 101-1551 Broadway Street, Port Coquitlam, BC, Canada V3C

9  6N9.

10        14.    Defendant Fit Foods Distribution, Inc. is incorporated in Canada, with a

11  principal place of business address at 101-1551 Broadway Street, Port Coquitlam, BC,

12  Canada V3C 6N9.

13        15.    Based on information and belief, Defendant Fit Foods Distribution, Inc. is

14  a wholly owned subsidiary of Defendant Fit Foods, Ltd.  Defendant Fit Foods

15  Distribution, Inc. also has established an address in the United States for the distribution

16  of the Product within the United States, including the State of California.  The United

17  States physical address of Defendant Fit Foods Distribution, Inc. is 605 Hwy 76, Bldg.

18  2, White House, TN 37188.

19                            **JURISDICTION AND VENUE**

20        16.    This Court has subject matter jurisdiction over Plaintiff's claims pursuant

21  to 28 U.S.C. § 1332(d) because the combined claims of the proposed class members

22  exceed $5,000,000[1] and because Defendant is a citizen of a different state from the

23  members of the Classes.

24

25

26  [1] Defendant's Products are sold through numerous different online and brick/mortar
    retailers, including GNC, Vitamin Shoppe, and Bodybuilding.com.  There are likely
27  tens of thousands of class members composing the proposed classes with tens of
    millions of dollars spent on the Products due to the far reaching distribution channels
28  and high consumer demand for whey protein products.

3

CLASS ACTION COMPLAINT

17.    This Court has personal jurisdiction over Defendant because it regularly conducts business in this District.

18.    Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### The Differences Between Whey Protein & Free Form Amino Acids

19.    Whey is a complete protein source, which means it contains all the essential amino acids the human body needs to build protein-based compounds such as muscle tissue, skin, fingernails, hair and enzymes. Daily protein needs depend on one's size, gender and activity levels, although they likely amount to somewhere between 46 grams and 56 grams. For elite athletes, daily protein requirements are well over 100 grams, a need that is difficult to fulfill with simply ingesting food.  Others may also need to supplement their protein intake for reasons of ill health.

20.    Whey protein powder is especially rich in branched-chain amino acids -- leucine, isoleucine and valine -- which are metabolized directly within the muscles as opposed to being processed in the liver first.

21.    The 2005 dietary reference intake (DRI) guidance from the National Academy of Sciences clearly defines protein as macromolecules with links of amino acids, and does not mention free-form amino acids or creatine.  Although amino acids are the building blocks of protein, they do not have the same beneficial effects of whole protein when they are free-form, and not part of an actual protein partly because of the way protein is digested and absorbed by the body.  Several studies have shown that protein is absorbed more effectively than free-form amino acids.[2]

---

[2] *See, e.g.*, Di Pasquale MG. Amino Acids and Proteins for the Athlete: The Anabolic Edge, Second Edition.  Boca Raton, FL: CRC Press; 2008:190.

22.     Accordingly, at least one study was conducted to determine whether the effects of whey protein ingestion on muscle protein accrual are due solely to its constituent essential amino acid content. The study was a comparison of three trial groups. The first provided intact whey protein (whey protein powder). The other two trials provided either the individual essential amino acids (i.e. free-form) or the individual non-essential amino acids found in whey.  The researchers determined that whey protein ingestion improves skeletal muscle protein accrual through mechanisms that are beyond those attributed to its essential amino acid content.[3]

23.     Yet another study found that "the lack of recovery after immobilization-induced atrophy during ageing is due to an 'anabolic resistance' of protein synthesis to amino acids during rehabilitation."  The study's results "highlight a novel approach to induce muscle mass recovery following atrophy in the elderly by giving soluble milk protein or high protein diets."[4]

24.     Thus, one review study concluded that, "the bound form of an EAA [essential amino acid] may be more efficiently utilized than when delivered in its free-form."[5]

**Defendant's Misleading Labeling of Mutant Whey**

25.     Defendant prominently features "whey protein," the name of the ingredient sought by millions of American consumers, in the very name of the product, "Mutant Whey Extreme Multi Whey Mega Blend."  Defendants also represent

[3] Katsanos C, *et al*. Whey protein ingestion in elderly results in greater muscle protein accrual than ingestion of its constituent essential amino acid content. Nutr. Res. Oct. 2008; 28(10):651-658.
[4] Magne H, *et al*. Contrarily to whey and high protein diets, dietary free leucine supplementation cannot reverse the lack of recovery of muscle mass after prolonged immobilization during ageing. J. Physiol. Apr 15, 2012; 590(Pt 8): 2035-2049.
[5] Terada T, Inui K. Peptide transporters: structure, function, regulation and application for drug delivery. Curr Drug Metab. 2004;5:85-94.

on the front of the Product label that it contains "44 grams of whey protein per serving"[6] and "Includes 17 grams of BCAA's and Glutamine":

6

CLASS ACTION COMPLAINT

1    26.    Defendant represents the Products to contain 22 grams of protein per scoop

2  (or 44 grams per serving based on the front label recommendation) in the Supplement

3  Facts section of the Products' label:

# Supplement Facts

Serving Size 1 Scoop (36g)
Servings Per Container About 63

| Amount Per Serving | | %Daily Value* |
|---|---|---|
| Calories | 150 | |
| Calories from Fat | 30 | |
| Total Fat | 3.5g | 6% |
| Saturated Fat | 2g | 10% |
| Trans Fat | 0g | |
| Cholesterol | 90mg | 29% |
| Sodium | 80mg | 3% |
| Potassium | 180mg | 5% |
| Total Carbohydrates | 7g | 2% |
| Dietary Fiber | <1g | 3% |
| Sugars | 2g | |
| Protein | 22g | |
| Vitamin A | | 0% |
| Vitamin C | | 0% |
| Calcium | | 10% |
| Iron | | 0% |

**Proprietary Blend 35g** †

**MUTANT EXTREME MULTI WHEY Mega Blend**
NitroSerum™ (Unique Membrane Filtered Whey Protein Concentrate / Phospholipid Complex), Ultra-Filtered and Dia-Filtered Whey Protein Concentrates, Cross Flow Micro-Filtered Whey Protein Isolate, ActiNOS® Whey Protein Hydrolysate

**EAA/Volumizing Amino Acids**
Taurine, L-Threonine, L-Glycine, Glutamine Peptides (from Wheat), Micronized L-Leucine

**Sport Oil Complex**
MCT Oil Powder (50% Coconut Oil in a base of Corn Syrup Solids, Sodium Caseinate, Dipotassium Phosphate; Contains 2% or less of Sucrose, Mono & Diglycerides, Silicon Dioxide, Sodium Silicoaluminate, Polysorbate 80, Tetrasodium Pyrophosphate, Soy Lecithin), Soybean Powder, Sunflower Seed Oil

**Dispersion Control Complex**
Maltodextrin, Inulin, Whole Oat Powder, Xanthan Gum, Carboxymethyl Cellulose

* Percent Daily Values are based on a 2,000 calorie diet.
† Daily Value not established.

**OTHER INGREDIENTS:** RED BEET POWDER, CITRIC ACID, NATURAL AND ARTIFICIAL FLAVORS, SILICON DIOXIDE, SODIUM CHLORIDE, POTASSIUM CITRATE, ACESULFAME POTASSIUM, SUCRALOSE, CINNAMON, SOYA LECITHIN.
**CONTAINS:** MILK, WHEAT, SOY, OAT, CORN, TREE NUT (COCONUT), SUNFLOWER SEED AND CINNAMON INGREDIENTS. PRODUCED ON MACHINERY THAT ALSO HANDLES EGG, FISH, CRUSTACEAN SHELLFISH, TREE NUTS, PEANUTS, SULPHITES – THIS PRODUCT MAY INADVERTENTLY CONTAIN ANY OF THOSE INGREDIENTS. PROPORTIONS INDICATED ARE SUBJECT TO CHANGE.

CLASS ACTION COMPLAINT

27.     However, Defendant's claimed total protein count of 44 grams of protein per serving is not exclusively derived from whey protein but also includes, for the purposes of "protein-spiking," several free form amino acids,  including Alanine, Glycine, Threonine, and Taurine.

28.     Once these "protein spiking" agents are removed from the formula of analysis, and the "bound" amino acid count is determined, the true content of whey protein in the Products can be determined.

29.     After scientific testing of the Products,  the actual total content of whey protein per two-scoop serving is approximately 32.576 grams  (as  calculated  from  the total  bonded  amino  acids),[7]  as  opposed  to the 44  grams  per serving claimed by Defendant for their "whey protein" product.  *See* Exhibit A.

30.     The representations that the Products contain the 44 grams of protein per serving (two scoops) as disclosed in the "Supplement Facts" on the back of the package, along with the "44 grams of whey protein per serving" representations on the front of the package, are material and false and/or likely to mislead a reasonable consumer when, in fact, the Products contain no more than 32.576 grams of whey protein per serving.

31.     Although the back labels of the Product mentions *some* free form amino acids, by name, such as L-Glycine, L-Threonine, and Taurine, Defendant does not explain that these ingredients make up a significant portion of the claimed protein content.  Rather, by claiming the Products contain "44 grams of whey protein per serving" and representing the protein content without revealing the spiking, Defendant purposefully misleads the consumer into thinking that the entire claimed protein content is whey protein.

32.      The FDCA prohibits this type of misleading labeling in food:

> "The labeling of a food which contains two or more ingredients
> may be misleading by reason (among other reasons) of the

---

[7] This multiplies the Exhibit A test results by two, based on the 2-scoop, or 72-gram, serving recommendation on the Products' front label.

CLASS ACTION COMPLAINT

designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling."

21 C.F.R. § 101.18(b)

33.   In violation of 21 C.F.R. § 101.18(b), Defendant misleads consumers by referencing whey protein, including in the name of the Products, but never disclosing the limited amount of whey protein that the Products actually deliver or disclosing that the Products' protein content is only fractionally whey protein.

34.   A reasonable consumer looking at the name of the Product and the claimed protein content is misled into thinking that the grams of protein per serving claimed by Defendant is derived exclusively from whey.

35.   This false and misleading product name, the false and misleading claim "44 grams of whey protein per serving," and the Supplement Facts section, taken together, misled Plaintiff and reasonable consumers into believing that the protein content of the Products is derived solely from whey protein.

36.   Plaintiff and Class Members were in fact misled by Defendant's representations regarding the true nature of the protein content and value.

37.   The difference between the products promised and the Products sold is significant.   The amount of actual protein provided, and the measure of protein per serving, has real impact on the benefits provided to consumers by the Products, and the actual value of the Products.

**Defendant's False and Misleading Claims Regarding the Amount of Glutamine and Branched Chain Amino Acids in the Products**

38.   The Products' labels claim that the Products contains 17 grams of L-Glutamine and the Branched Chain Amino Acids L-Leucine, L-Valine, and L-Isoleucine ("BCAA's").  However, scientific testing revealed that the Products only contain 7.356 grams of BCAAs per two scoops and zero L-Glutamine.  *See* Exhibit A.

9

39.     The FDA promulgated regulations for compliance with the FDCA and DSHEA at 21 C.F.R. 101, *et seq*.  These regulations require all ingredients to be listed on the label of dietary supplements sold to the public.  21 C.F.R. 101.4.

40.     Defendant's false and misleading claims contained herein are in violation of 21 C.F.R. § 101.18(b), making the Products misbranded.

41.     Defendant's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular."

42.     California prohibits the misbranding of food in a way that parallels the FDCA through the "Sherman Law", Cal. Health & Saf. Code § 109875, *et seq*.  The Sherman Law provides that food is misbranded "if its labeling is false or misleading in any particular."  *Id*.

43.     The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA," as the food labeling regulations of California Cal. Health & Saf. Code, § 110100, subd. (a).

44.     Further, as explained above, Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "A food shall be deemed to be misbranded . . . [i]f its labeling is false or misleading in any particular."

45.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

46.     Plaintiff and Class Members would not have purchased the Products, or would have not paid as much for the Products had they known the truth about the mislabeled and falsely advertised Products.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action individually and as representatives of all those similarly situated pursuant to Rule 23 of the Fed. R. Civ. P. on behalf of the class and subclass ("the Classes").  The Classes are defined as follows:

**National Class:**  All persons in the United States who purchased the Products at any time during the four years before the date of filing of this Complaint to the present.

**California Subclass:**  All persons in the State of California who purchased the Products at any time during the four years before the date of filing of this Complaint to the present.

48.     Excluded from the Classes are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned, any member of the judge's immediate family, and the courtroom staff.

49.     The Classes are so numerous that joinder of all members is impracticable. On information and belief, the Classes have more than 10,000 members.  Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

50.     There are numerous questions of law and fact common to Plaintiff and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

      a.     The true nature of the protein content in the Products;

      b.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

      c.     Whether Defendant's actions violate  California's  Unfair Competition Law, Business and Professions Code § 17200, *et seq.*;

      d.     Whether Defendant's actions  violate  California's  False Advertising Law, Business and Professions Code § 17500, *et seq.*;

      e.     Whether Defendant's actions violate California's Consumers Legal Remedies Act, Civil Code § 1750, *et seq.*;

CLASS ACTION COMPLAINT

f.      Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class Members; and

g.      Whether Defendant breached an express warranty to Plaintiff.

51.     Plaintiff's claims are typical of the claims of the Classes.  Plaintiff's claims, like the claims of the Classes, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

52.     Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions.  Plaintiff and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.  Neither Plaintiff nor their counsel has interests that are contrary to or that conflict with those of the proposed Classes.

53.     Defendant has engaged in a common course of conduct toward Plaintiff and members of the Classes.  The common issues arising from this conduct that affect Plaintiffs and members of the Classes predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

54.     A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide relief is necessary to compel Defendant to keep such adulterated and misbranded products out of the market and to compensate those who have mislead into purchase of the Products.  The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because Defendant acted or failed to act on grounds generally applicable to the Classes.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency

CLASS ACTION COMPLAINT

of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

55.     Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class wide basis.

## FIRST CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et. seq.***

**(On Behalf of the California Subclass)**

56.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

57.     Plaintiff and each member of the Class is a "Consumer" as that term is defined by Cal. Civ. Code § 1761(d).

58.     The Products are a "Good" as that term is defined by Cal. Civ. Code § 1761(a).

59.     Defendant is a "Person" as defined by Cal. Civ. Code § 1761(c).

60.     The transaction(s) involved here are "Transaction(s)" as defined by Cal. Civ. Code § 1761(e).

61.     Plaintiff and members of the Class are Consumers who purchased the Products for personal use within the applicable statute of limitations period.

62.     Plaintiff has standing to pursue this cause of action because Plaintiff has suffered injury-in-fact and has lost money or property as a result of Defendant's actions as set forth here.

63.     Plaintiff and Class members purchased the Products in reliance on Defendant's labeling and marketing claims.

64.     Defendant's practices constitute violations of Cal. Civ. Code § 1770 in at least the following respects:

(a)     in violation of Section 1770(a)(2), Defendant misrepresented the source of the Products' protein as whey, when, in fact, they are "spiked" with free form

amino acids;

   (b)   in violation of Section 1770(a)(5), Defendant represented that the Products have characteristics and benefits (whey protein per serving) that they do not have (because they contain less whey protein per serving than indicated);

   (c)   in violation of Section 1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade (whey protein per serving), when they are of another (containing less whey protein per serving than indicated);

   (d)   in violation of Section 1770(a)(9), Defendant has advertised the Products as containing a certain amount of whey protein per serving with the intent not to sell them as advertised (containing less whey protein per serving than indicated); and

   (e)   in violation of Section 1770(a)(16), Defendant has represented that the Products were supplied in accordance with previous representations (amount of whey protein per serving), when in fact they were not (because they contain less whey protein per serving than indicated).

65.   Defendant knew or should have known that their representations of fact are material and likely to mislead consumers.

66.   Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer to his or her detriment.  Like Plaintiff, members of the Class would not have purchased the Products had they known the true amount of whey protein in the Products.

67.   Plaintiff and members of the Class have been directly and proximately damaged by Defendants' actions.

68.   In conjunction with filing this Complaint, Plaintiff's Counsel mailed to Defendant, by certified mail, return receipt requested, the written notice required by Civil Code §1782(a).  Should Defendant fail to respond within thirty days, Plaintiff will amend to seek damages under the Consumers Legal Remedies Act.

69.   Defendant has engaged in, and continues to engage in, business practices in violation of the Consumers Legal Remedies Act, Civ. Code §1750, et seq. by

CLASS ACTION COMPLAINT

continuing to make false and misleading representations on their labeling of the Products.

70.     These business practices are misleading and/or likely to mislead consumers and should be enjoined.

## SECOND CAUSE OF ACTION

### Violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*
### (On Behalf of the California Subclass)

71.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

72.     Plaintiff and the Class have standing to pursue a cause of action for false advertising under Cal. Bus. & Prof. Code §17500, *et seq.*, because Plaintiff and members of the Class have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

73.     Defendant labeled, advertised, marketed, and otherwise disseminated misleading information to the public through the product labels.

74.     Defendant continues to disseminate such statements.

75.     Defendant's statements are misleading.

76.     Defendant knows that these statements are misleading, or could have discovered their misleading nature with the exercise of reasonable care.

77.     Plaintiff and Class members relied on Defendant's marketing and labeling.

78.     Defendant's actions violate Cal. Bus. & Prof. Code § 17500, *et seq.*

79.     As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff and Class members who paid for the Products. Therefore, Defendant has been unjustly enriched.

80.     Plaintiff and Class members seek injunctive relief, restitution, and disgorgement of Defendant's ill-gotten gains as provided for by Cal. Bus. & Prof. Code § 17535.

CLASS ACTION COMPLAINT

81.     Plaintiff and Class members seek injunctive relief to compel Defendant from continuing to engage in these wrongful practices in the future. No other adequate remedy at law exists. If an injunction is not ordered, Plaintiff and Class members will suffer irreparable harm and/or injury.

## THIRD CAUSE OF ACTION

**Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***

**(On Behalf of the California Subclass Members)**

82.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

83.     Plaintiff and the Class have standing to pursue a cause of action for false advertising under Cal. Bus. & Prof. Code § 17200, *et seq.*, because Plaintiff and members of the Class have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

84.     Defendant's actions as described herein constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200, in that Defendant has engaged in deceptive business practices by falsely advertising the content of whey protein in the Products.

85.     Defendant's actions as described herein constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200, in that Defendant has engaged in unlawful, unfair and deceptive business practices by deceiving consumers and violating California's Sherman Food Drug & Cosmetic Act and California's Consumer Legal Remedies Act.

86.     Defendant's actions as described herein constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200, on the additional grounds that Defendant has failed to properly label the Products in accordance with 21 C.F.R. § 101, *et seq*.

87.     Defendant's actions also constitute unfair competition within the meaning of Cal. Bus. & Prof. Code §17200, in that Defendant has made unfair, deceptive, untrue

16

or misleading statements in advertising mediums, including the labels, in violation of Cal. Bus. & Prof. Code § 17500.

88.   Defendant's actions have caused economic injury to Plaintiff and Class members.  Plaintiff and Class members would not have purchased the Products had they known the true nature of the whey protein content.

89.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and Class members seek an injunction enjoining Defendant from continuing to market, advertise, and sell the Products without complying with federal and state law and to prevent Defendant from continuing to engage in unfair competition or any other act prohibited by law.

90.   Plaintiff and Class members also seek an order that requires Defendant to make full restitution and disgorgement of their ill-gotten gains of all money wrongfully obtained from Plaintiff and Class members as permitted by Cal. Bus. & Prof. Code § 17203.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of the National Class and the California Subclass)

108.   Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

109.   Plaintiff and Class Members conferred benefits on Defendant by purchasing the Products.

110.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchase of the Products.  Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and Class Members because they would have not purchased the Products, or would not have paid as much for them, had they known the true facts.

111.   Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant must pay

restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty

### (On Behalf of the National Class and the California Subclass)

112.   Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

113.   Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other Class members purchased the Products.  The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging, as described above.  These promises constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

114.   Defendant purports through its advertising, labeling, marketing and packaging to create an express warranty that the Product contained "44 grams of whey protein per serving" protein.

115.   Plaintiff and the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

116.   Defendant breached express warranties about the Product and its qualities because Defendant's statements about the Product were false and the Product does not conform to Defendant's affirmations and promises described above.  Plaintiff and the Class Members would not have purchased the Products had they known the true nature of the Products' ingredients and what the Products did and did not contain.

117.   As a result of Defendant's breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

## **PRAYER FOR RELIEF**

Plaintiff requests for the following relief:

A.      Certification of the proposed National Class;

B.      Certification of the proposed California Subclass;

D.      Appointment of Plaintiff as class representative;

E.      Appointment of the undersigned counsel as counsel for the Classes;

F.      A declaration that Defendant's actions complained of herein violate the state of California consumer protection statutes;

G.      A declaration that Defendant was unjustly enriched;

H.      A declaration that Defendant breached an express warranty to Plaintiff and the Class;

I.      An order that enjoins Defendant from engaging in the unlawful conduct set forth herein;

J.      An order that compels Defendant to conduct corrective advertising;

K.      An award to Plaintiff and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

L.      Leave to amend this Complaint to conform to the evidence presented at trial; and

M.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

CLASS ACTION COMPLAINT

**JURY DEMAND**

Plaintiff demands a trial by jury for all issues so triable.

Dated:  November 19, 2014

Respectfully submitted,
**AHDOOT & WOLFSON, PC**

Tina Wolfson
1016 Palm Avenue
West Hollywood, CA 90069
Tel: (310) 474-9111
Fax: (310) 474-8585
Email: twolfson@ahdootwolfson.com

Nick Suciu III (*Pro Hac Vice* Application Forthcoming)
**BARBAT, MANSOUR & SUCIU PLLC**
434 West Alexandrine #101
Detroit, MI 48201
Tel: (313) 303-3472
Email: nicksuciu@bmslawyers.com

Jonathan Shub
**SEEGER WEISS, LLP**
1515 Market Street
Philadelphia, PA 19102
Tel: (215) 564-1300
Email: jshub@seegerweiss.com

Counsel for Plaintiff,
Adrian Canizalez

CLASS ACTION COMPLAINT

**AFFIDAVIT OF TINA WOLFSON**

I, Tina Wolfson, declare as follows:

1.       I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiff Adrian Canizalez ("Plaintiff") in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code section 1780(d). I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.       Based on my research and personal knowledge, Defendant Fit Foods, Ltd. and Fit Foods Distribution, Inc. (collectively, "Defendant") do business within the County of San Diego and Plaintiff purchased Defendant's products within the County of San Diego, as alleged in the Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this 19th day of November, 2014 in West Hollywood, California that the foregoing is true and correct.

_____
Tina Wolfson

CLASS ACTION COMPLAINT